UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:11-CV-00027-JHM

DENNAE FARMER AND
PHYLLIS SIDDON                                                              PLAINTIFFS

V.

DOLLAR GENERAL CORPORATION
AND BETTY ROGERS                                                            DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Dollar General Corporation's motion for summary judgment [DN 17]. Defendant Betty Rogers adopted all claims made by Dollar General Corporation in its motion for summary judgment [DN 16]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court **GRANTS** the Defendant's motion for summary judgment.

**I. BACKGROUND**

Plaintiffs Dennae Farmer ("Farmer") and Phyllis Siddon ("Siddon") were both African American sale associates employed by Dollar General Partners at a store located in Owensboro, Kentucky. During the time of their employment, Brian Canter was employed as the Store Manager and Betty Rogers was employed as a Lead Associate (also called a Third Key) until her termination date.

Farmer was hired at Dollar General on December 9, 2009. She continued working at the Owensboro store until June 2, 2010 when she gave Canter a week's notice that she was quitting due to a commitment to the United States Army, racial harassment, certain employees being subject to different disciplinary action, and poor treatment from management. Farmer's claims stem from

interactions with Defendant Betty Rogers ("Rogers"), a Caucasian woman. Farmer alleges that during her first week of work, Rogers stated that her husband calls Rogers' children "niggers because they are mixed." (Farmer Dep. 55:15-18; Exhibit 5 [DN 19-5].) Additionally, Farmer states that Rogers made other inappropriate comments to her including: "they call me black Betty because I have a black booty;" Rogers stated her husband's truck is nicknamed "Little Black Betty" and Rogers is "Big Black Betty;" and Rogers used the phrase "black ass" when referring to Siddon. (Farmer Dep. 57:2-5; 58:6-8 and 21-22 [DN 19-5].) Farmer reported these comments to Canter on February 16, 2010. On Easter Sunday of the same year, Rogers made a comment to Farmer, asking Farmer if she would be "too ashy" to wear capri pants. (Id. at 65:4-20 [DN 19-5].) This was reported to Canter on the same day and was documented May 26, 2010. At some point in late May or early June, out of frustration, Farmer went to the media regarding the alleged harassment. (Farmer Dep. 76:23-25 [DN 19-5].) On June 2, 2010 Farmer arrived about fifteen minutes late to work and was written up by management. That same day Farmer put in her notice that she was quitting, frustrated that she was being punished for being late but management had not yet taken action against Rogers. (Id. at 74:5-20 [DN 19-5].)

     Siddon began working at the Dollar General Owensboro store in May of 2009 and remained at the store through all relevant times. At the end of December, Rogers allegedly made inappropriate comments to Siddon, telling Siddon that Rogers' babysitter and Rogers' husband called her children 'niggers' and 'monkeys.' (Siddon Dep. 26:5-8, 26:20-22, 27:1 [DN 19-7].) Siddons reported these comments to Canter on February 16, 2010. Following that incident, Siddons and Rogers went to a Dollar Store location in Dale, Indiana together because the store was remodeling. At some point during their time at the store, Siddon states that Rogers shouted out, "All

blacks to the back." (Id. at 31:17-25, 36:13-15 [DN 19-7].) Siddons was the only African American in the store at that time. Other unreported comments that Siddons heard Rogers make include Rogers referring to herself as a 'white woman in a black girls body;' and calling herself a black person because she had 'rust' between her fingers. (Pl's Answers to Interrogatories, 2-3 [DN 19-8].) Lastly, Rogers showed Siddon a picture of a birthday cake that Rogers made for her brother which was in the shape of a naked black woman. Siddon states that Rogers was laughing about the cake and when Siddon inquired why it was so funny, Rogers answered, "Because my family doesn't like black people." (Siddon Dep. at 32:14-25, 33:1-2 [DN 19-7].)

Dollar General has policies prohibiting discrimination and harassment, and both Farmer and Siddon were provided with those policies. While not all incidents were reported to Canter, an investigation was launched by Dollar General's District Manager, Rick Vaughn. Vaughn took statements from both Plaintiffs and Rogers, and ensured that they understood the discrimination and anti-harassment policies. The investigation resulted in Rogers' termination on June 8, 2010 for inappropriate language.

Farmer filed a complaint with the Equal Employment Opportunity Commission and received her right to sue letter on November 9, 2010. On February 2, 2011, Plaintiffs filed this action against Defendant in Daviess Circuit Court asserting a claim of hostile work environment, retaliation and constructive discharge. Farmer brings her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e and the Kentucky Civil Rights Act, K.R.S. § 344.040(1)(a). Siddon brings her claims under the Kentucky Civil Rights Act only. The Plaintiffs also assert a common law claim of intentional infliction of emotional distress. The case was removed to this Court on March 4, 2011. Defendant Dollar General filed this motion for summary judgment and Defendant Betty

Rogers adopted all claims in Dollar General's motion for summary judgment [DN 16].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

The Plaintiffs have alleged claims under both Title VII and the Kentucky Civil Rights Act. Under the Kentucky Civil Rights Act ("KCRA"), it is unlawful for an employer

> [t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges

4

of employment, because of the individual's race, color, religion, national origin[.]

K.R.S. § 344.040(1)(a). "Racial discrimination claims filed pursuant to Ky. Rev. Stat. § 344.040(1) are analyzed under the standards applied to federal racial discrimination claims brought pursuant to Title VII of the Civil Rights Act of 1964." Scott v. G & J Pepsi-Cola Bottlers, Inc., 391 Fed. Appx. 475, 477 (6th Cir. 2010). Therefore, the hostile work environment claims alleged by both Plaintiffs, the constructive discharge alleged by Farmer, and the retaliation claim alleged by Farmer will all be analyzed under Title VII.[1]

**A. Hostile Work Environment**

Defendant claims that the Plaintiffs have failed to show that the alleged racial harassment claims are actionable because they fail to show that "the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim subjectively regarded it as abusive." Smith v. Leggett Wire Co., 220 F.3d 752, 760 (6th Cir. 2000). Defendant provides a series of cases with fact scenarios that do not amount to a "severe and pervasive" environment, and claim those fact scenarios were far more offensive than Plaintiffs' alleged facts. As support for the claim, Defendants state that while Rogers made racial comments, and used inappropriate language, particularly 'nigger,' "she did so only in the context of telling a story about comments other people made about her bi-racial children." (Def.'s Mot. Summ. J., 14 [DN 17-1].) Defendants acknowledge that the comments were racially insensitive but argue that

---

[1] In its motion for summary judgment, Dollar General Corporation asserted it was not the employer of Plaintiffs, and therefore was not liable under Title VII or KCRA. Dollar General Partners is a wholly owned subsidiary of Dollar General Corporation, and Dollar General Corporation states they are separate and distinct legal entities. Dollar General Corporation withdrew this argument in its reply, however, asking the Court to decide on the merits of the claim so Plaintiffs can not refile the case against Dollar General Partnership. Therefore, the issue of Dollar General Corporation not being the proper defendant will not be addressed.

they did not create an intolerable work environment as "Rogers (a Caucasian woman) allegedly made most of the comments at issue about herself" and they were made sporadically over a six month time period. (Id. [DN 17-1].) Furthermore, Defendant states that it is not liable for the alleged conduct of Betty Rogers since she was a co-worker of the Plaintiffs, and as the employer, Defendant did not "tolerate or condone[] the situation" nor "knew or should have known of the alleged conduct and did nothing to correct the situation." See Jones v. Miller Pipeline Corp., WL 2297521, at * 4 (W.D. Ky. Sept. 21, 2005).  Defendant states that Rogers' comments were investigated and the investigation resulted in Rogers' termination.

In response, Plaintiffs acknowledge that Rogers was eventually fired, but argues that the Plaintiffs' concerns, while at first received an encouraging response from management, were ignored with no results for several months.  Plaintiffs reported the racial comments to Brian Canter, and made calls to Dollar General's Alternative Dispute Line, but the inaction caused Plaintiffs anger, frustration and confusion.  Plaintiffs state that a hostile work environment is comprised of "a succession of harassing acts, each of which may not be actionable on its own." Clay v. United Parcel Service, Inc., 501 F.3d 695, 708 (6th Cir. 2007).  Plaintiffs reason that a jury could conclude that the multiple and frequent racial statements, use of the word "nigger," and comments such as "all blacks get to the back," amount to a hostile environment that Defendant should have prevented and corrected.  Additionally, Plaintiffs believe material issues of fact exist as to whether Rogers was a person of authority over Plaintiffs.

In order for racial harassment to be actionable under Title VII, "it must be 'sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive work environment.'" Chancellor v. Coca-Cola Enterprises, Inc., 675 F.Supp. 2d 771, 779 (6th Cir. 2009)

(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). To establish a prima facie case of hostile work environment based on race, a plaintiff must prove that: "1) He was a member of a protected class; 2) He was subjected to unwelcome racial . . . harassment; 3) The harassment was based on race. . . ; 4) The harassment had the effect of unreasonably interfering with [plaintiff's] work performance by creating an intimidating, hostile or offensive work environment; and 5) The existence of employer liability." Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999); see also Clark v. United Parcel Service, Inc., 400 F.3d 341, 347 (6th Cir. 2005). For purposes of the motion for summary judgment, the Court will assume that the first three requirements were met.[2] In making a determination of whether an environment is "hostile" or "abusive," the Court must look at the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). "[S]imple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Barrett v. Whirpool Corp., 556 F.3d 502, 514 (6th Cir., 2009) (citation omitted).

Employer liability, the fifth prong of establishing a prima facie case, "differs depending on whether the harassment was carried out by co-workers or supervisors." Barrett, 556 F.3d at 516. If the harassment is from a co-worker, employer liability depends on the "employer's actions, or lack thereof, in response to the harassment: The plaintiff must show that the employer 'knew or should have known of the charged [racial] harassment and failed to implement prompt and appropriate

---

[2] In its motion for summary judgment, Defendant did not address or challenge the first three prongs.

corrective action.'" Id. (quoting Hafford, 183 F.3d at 513). An employer is vicariously liable, however, for harassment by a supervisor, regardless of whether the employer had knowledge of the harassment. See Id.

A hostile environment is determined on a case by case basis. For example, summary judgment was found inappropriate in the circumstances of E.E.O.C. v. Ralph Jones Sheet Metal, Inc., 777 F.Supp.2d 1119 (W.D. Tenn. 2011). In that case, the plaintiffs alleged that their foreperson used "a litany of racial slurs and intimidating actions," visibly wore a gun on a regular basis, made specified racial threats, provoked racial violence, and described "an atmosphere that was racially offensive, demeaning, and oppressive." 777 F.Supp.2d at 1122. Given the lack of evidence as to the defendant's anti-harassment policy and no complaint mechanism was in place, the district court found summary judgment was inappropriate. In contrast, the Sixth Circuit affirmed the district court granting summary judgment in Sweezer v. Michigan Dept. of Corrections, 2000 WL 1175644 (6th Cir. Aug. 11, 2000). Among several other instances, the plaintiff, an African American woman, alleged that a co-worker remarked "hey, there's a new colored woman in town;" plaintiff was called "bitch" and "nigger;" told that "if affirmative action was not passed, whites would not hire minorities;" noticed air had been let of her tire; her time card was taken on several occasions; and was told that as a black female, she was "at the bottom of the totem pole when it came to supervision of white subordinates." Id. at *1-3. The Sixth Circuit determined that the corrections facility was an "unpleasant place to work," but held that a reasonable person could not conclude that "the race-based incidents, caused by either coworkers or supervisors, were sufficiently severe and pervasive to create an intolerable working environment[.]" Id. at *6.

Of the alleged instances of harassment by Rogers, only one was actually directed at a

plaintiff, the comment made to Siddon: "All blacks to the back." While the comments made by Rogers were extremely inappropriate, and racially insensitive, the majority were made regarding Rogers herself and Rogers' children. Plaintiffs describe roughly ten inappropriate interactions with Rogers during the six month time period at issue. These statements were not physically threatening and were made as Rogers was talking about random issues not pertaining to Plaintiffs or their jobs. Both Plaintiffs stated they would often ignore Rogers, and neither stated they felt intimidated by her. Farmer testified that she liked her job and liked the people she worked with, aside from Rogers, but was frustrated with how slowly management was handling her complaints. (Farmer Dep. 89:10-12 [DN 19-5].) Siddon testified that after Rogers was terminated she did not have any problems with Dollar General in regards to racial discrimination. (Siddon Dep. 29:21-25; 30:1-5 [DN 19-7].) Both testify that the managers, Canter and Vaughn, initially, were concerned about their allegations, and Vaughn apologized for taking so long to come to a resolution. (Farmer Dep. 59:19-25 [DN 19-5]; Siddon Dep. 39:9-24 [DN 19-7].) The comments understandably made the Plaintiffs uncomfortable and angry, but they did not alter their working conditions or create an abusive working environment. Plaintiffs were able to walk away from Roger's 'offensive utterances,' and Defendants state Rogers and Farmer worked together seven hours a week or less after February of 2010. (Def.'s Mot. Sum. J., 17 [DN 17].) The Court holds that Rogers' conduct was not "severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 21.

While Plaintiffs state that material issues of fact exist as to whether Rogers was in a management position, which would make Dollar General vicariously liable for her actions, the Court does not need to address this issue since it determined that Rogers' comments did not create an

9

intimidating, hostile or offensive work environment. Additionally, having found no hostile work environment, it is not necessary to determine if Farmer was constructively discharged.

### B. Retaliation

Defendant states that Farmer's retaliation claim must also fail as a matter of law. Defendant argues that in her Complaint, Farmer did not state a basis for her retaliation. Furthermore, Defendant states that no allegations were made during Farmer's deposition that she suffered an adverse employment action as a result of her complaints regarding discrimination.

To make out a claim of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Scott v. Metropolitan Health Corp., 234 Fed.Appx. 341, 346 (6th Cir.2007); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000). If and when a plaintiff has established a prima facie case, the burden of production once again shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer carries that burden, the plaintiff bears the burden of demonstrating that the employer's reason is pretextual. Blair v. Henry Filters, Inc., 505 F.3d 517, 524 (6th Cir. 2007).

Farmer failed to respond to the Defendant's claim that she could not establish the elements necessary to establish a prima facie case of retaliation. The Court assumes that the retaliation claim is abandoned and Farmer can not prove the necessary elements of a retaliation claims. Therefore, the Court holds that Farmer's retaliation claim fails as a matter of law.

### C. Intentional Infliction of Emotional Distress

Defendant states that Plaintiffs' claims for intentional infliction of emotional distress ("IIED") are barred by the exclusivity provision of the Kentucky Workers' Compensation Act ("KWCA"). Furthermore, Defendant argues that even if the claims were not barred by the KWCA, a claim for IIED is preempted by a statutory discrimination claim under the KCRA. Even if the IIED claim was not preempted, Defendant contends that Plaintiffs can not meet the high standard necessary to prevail on an IIED claim.

In Kentucky, a claim for intentional infliction of emotional distress is also known as the tort of outrage. Humana of Kentucky, Inc. v. Seitz, 796 S.W.2d 1, 3 (Ky. 1990). To prevail on a claim of intentional infliction of emotional distress, or outrage, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there is a causal connection between the conduct and the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff is severe. Gilbert v. Barkes, 987 S.W.2d 772, 777 (Ky. 1999); Kroger Co. v. Willgruber, 920 S.W.2d 61 (Ky. 1996). The Kentucky Supreme Court has set a very high standard for a plaintiff, stating that in order to succeed "[it is] not enough that the defendant has acted with an intent which is tortious, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' . . . Liability has been found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Seitz, 796 S.W.2d 1, 3 (Ky. 1990) (quoting Restatement (Second) of Torts, § 46, Comment d). "Citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action." Kroger Co. v. Willgruber, S.W.2d 61, 65 (Ky. 1996).

11

While Plaintiffs did not address the IIED claim in their response, the Court does not find Defendant's argument that Plaintiffs' IIED claim is barred by the exclusivity provision of the Kentucky Workers' Compensation Act ("KWCA") persuasive since this is not a worker compensation case.  See Zurich Ins. Co. v. Mitchell, 712 S.W.2d 340 (1986) (holding that in a case *regarding the collection of compensation payments*, the "[a]pplication of the tort of outrage under the circumstances here is not appropriate."); Shamrock Coal Co., Inc. v. Maricle, 5 S.W.3d 130 ("[A]bsent 'willful and unprovoked physical aggression' by an employee, officer, or director, there is no exception to the exclusivity liability provision of the *Workers' Compensation Act*.").

The Defendant's argument that the IIED claims are preempted by Plaintiffs' Kentucky Civil Rights Act claim does have merit.  Kentucky considers the tort of outrage, or intentional infliction of emotional distress to be a "gap filler."  Rigazzio v. Archdiocese of Louisville, 853 S.W.2d 295, 298-99 (Ky. Ct. App. 1993).  Where the alleged conduct makes out a claim for another tort for which emotional distress damages are available, IIED is not a valid cause of action in Kentucky.  See Grace v. Armstrong Coal Co., Inc., 2009 WL 366239 at *3-4 (W.D. Ky. Feb. 13, 1999) (dismissing IIED claim where claims for defamation and wrongful discharge provided for emotional distress damages).  The basis for the IIED claim is the same as for Plaintiffs' hostile work environment claim under Title VII and the KCRA.  See Wilson v. Lowe's Home Center, 75 S.W.3d 229 (Ky. Ct. App. 2001) (dismissing plaintiff's IIED claim because it was "subsumed by his KRS Chapter 344 claims"); Wiseman v. Whayne Supply Co., 359 F.Supp. 2d 579, 592 (W.D. Ky. Jan. 12, 2004) (dismissing IIED claim because Chapter 344 preempts it by providing damages for humiliation and person indignity as would a claim for IIED).  However, KCRA "only 'subsumes' outrageous-behavior claims against employers, not individuals." Hanley v. Chevy Chaser Magazine, LLC, 199

Fed. Appx. 425, 432 (6th Cir. 2006) (unpublished) (citing Wilson, 75 S.W.3d at 239 ("holding that KCRA preempts outrage claim against employer, but not individuals; 'the fact that a civil rights claim may be filed against an employer does not prohibit the filing if an [outrage] claim against the offending individuals against whom no civil rights claim could have been filed.'"). Therefore the IIED claim against Dollar General must fail.

In addressing the merits of Plaintiffs' IIED claim against Rogers, the Court simply cannot reasonably conclude that any of the behavior alleged by Plaintiffs was "conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Seitz, 796 S.W.2d at 3. The inappropriate comments were not made about the Plaintiffs, but about Defendant Rogers and her children, the comments were usually made during casual conversation where the Plaintiffs could walk away, and Rogers never threatened either Plaintiff. Rogers' comments consist of "petty insults, unkind words, and minor indignities" that, under Kentucky law, citizens are expected to withstand. Willgruber, 920 S.W.2d at 65. Accordingly, the IIED claim against Rogers fails as a matter of law.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [DN 16 and DN 17] are **GRANTED**.

*Joseph H. McKinley*

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: counsel of record

September 22, 2012

13